**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FIX THE COURT, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )   Case No. 18-1620 (CKK) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
## FOR A PRELIMINARY INJUNCTION

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS ................................................................................2

ARGUMENT ..............................................................................................4

  **I.**   **THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.** ..7

  **II.**  **FIX THE COURT IS ENTITLED TO A PRELIMINARY INJUNCTION.** .............7

     **A.**  **Fix the Court Is Likely to Succeed on the Merits.**....................................8

     **B.**  **Fix the Court Will Be Irreparably Harmed Absent the Requested Relief.** .............9

     **C.**  **The Requested Relief Will Not Burden Others' Interests.**.....................................14

     **D.**  **The Public Interest Favors the Requested Relief.**....................................16

**CONCLUSION** .......................................................................................18

## **TABLE OF AUTHORITIES**

**CASES**

*Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) ........................................................14

*Al-Fayed v. C.I.A.*, 254 F.3d 300 (D.C. Cir. 2001) .........................................................7

*Calderon v. U.S. Dep't of Ag.*, 236 F. Supp. 3d 96 (D.D.C. 2017) .............................13

*Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) ............................................................................................................8

*Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976) ......................................................14

*Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3 (D.D.C. 1999) ...................................................................................................................16

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96 (D.D.C. 2017) .................................................................................................................13

*Elec. Frontier Found. v. Office of the Dir. of Nat'l Intelligence*, 542 F. Supp. 2d 1181 (N.D. Cal. 2008) ..............................................................................................................13

\* *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) ....... 10, 13, 14, 15

*Jacksonville Port Auth. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) ...............................16

*Judicial Watch v. U.S. Secret Service*, 726 F.3d 208 (D.C. Cir. 2013) ......................12

*Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) ...............14

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ..................................11, 16

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) .......................................................13

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ..............................................7

*Payne Enters., Inc. v. United States*, 837 F.2d 486 (D.C. Cir. 1988) .....................9, 13

*Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5 (D.D.C. 2014) .....................................14

*Serono Labs., Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998) ...................................8

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) .........16

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ..........................................8

* *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006) ...................... passim

## STATUTES & REGULATIONS

5 U.S.C. § 552 ............................................................................................................ 3, 7, 8

28 C.F.R. § 16.5 ............................................................................................................. 4, 10

## CONGRESSIONAL MATERIALS

H.R. Rep. No. 93-876 (1974) ........................................................................................ 7, 13

## OTHER AUTHORITIES

*A Senate Deadline for Kavanaugh*, Wall St. J. (July 10, 2018, 7:37 PM),
    https://www.wsj.com/articles/a-senate-deadline-for-kavanaugh-1531265850 ......................... 4

Adam Liptak, *How Trump Chose His Supreme Court Nominee*, N.Y. Times, Feb. 6, 2017,
    https://www.nytimes.com/2017/02/06/us/politics/neil-gorsuch-trump-supreme-court-
    nominee.html ........................................................................................................... 2, 10

Brian Bennett, *How Brett Kavanaugh Could Change the Supreme Court—and America*, Time,
    July 12, 2018, http://time.com/5336621/brett-kavanaugh-supreme-court/ ............................. 13

Katie Benner, *Rosenstein Asks Prosecutors to Help With Kavanaugh Papers in Unusual Request*,
    N.Y. Times, July 11, 2018, https://www.nytimes.com/2018/07/11/us/politics/rosenstein-
    kavanaugh-document-review-prosecutors.html ...................................................................... 15

Lydia Wheeler, *Trump Eying Second Supreme Court Seat*, The Hill (Apr. 23, 2017).......... 2, 10

Oliver Roeder & Amelia Thomson-DeVeaux, *How Brett Kavanaugh Would Change The
    Supreme Court*, FiveThirtyEight (July 9, 2018), https://fivethirtyeight.com/features/how-brett-
    kavanaugh-would-change-the-supreme-court/ ...................................................................... 13

Stephen Jessee & Neil Malhotra, *The Chart That Shows the Supreme Court Will Be Out of Step
    With the Country*, N.Y. Times, July 12, 2018,
    https://www.nytimes.com/2018/07/12/opinion/kavanaugh-supreme-court-right.html ............ 13

*Trump Chooses Brett Kavanaugh for the Supreme Court*, N.Y. Times, July 9, 2018,
    https://www.nytimes.com/2018/07/09/us/politics/trump-supreme-court-nominee.html. ........... 3

In May 2017, Plaintiff Fix the Court, a non-partisan, grassroots organization dedicated to reform and transparency of the Supreme Court and public education regarding the same, sought public records concerning Judge Brett M. Kavanaugh's past public service based on widespread reporting that Judge Kavanaugh was a contender for President Trump's short list for the Supreme Court. Filing the request early ensured that Fix the Court would be able to fulfill its mission to inform the public rapidly in the event Judge Kavanaugh should be considered for a vacancy on the Supreme Court. On July 9, 2018, President Trump indeed nominated Judge Kavanaugh to fill a vacancy created by Justice Anthony Kennedy's retirement. Yet despite Fix the Court's prescience and diligence, it has been unable to obtain even a single record from the Department of Justice ("DOJ") more than one year after it filed its Freedom of Information Act ("FOIA") request.

Judge Kavanaugh brings to his nomination a lengthy career demanding thorough public scrutiny, and the non-public record of his activities before his appointment to the federal bench holds high value to the public. With Senate Majority Leader Mitch McConnell promising to fast-track confirmation proceedings (with cooperation and coordination with the Trump administration, including DOJ), DOJ's failure to meet its FOIA obligations threatens to deprive Fix the Court and the American public of information essential to ensure that Judge Kavanaugh's appointment receives rigorous, informed debate—in the Senate and among the general public—appropriate for a critical post in a representative democracy. Fix the Court and the American public have a brief opportunity to sift the record of Judge Kavanaugh's public career and inform the Senate as it makes an effectively irreversible decision that will shape the federal judiciary for decades. Fix the Court seeks immediate injunctive relief to protect its vital interests and those of the public it serves.

## STATEMENT OF FACTS

On May 8, 2017, Fix the Court submitted a FOIA request to DOJ seeking "[a]ll correspondence sent by U.S. Department of Justice personnel to Brett M. Kavanaugh and all correspondence sent by Brett M. Kavanaugh to U.S. Department of Justice personnel from January 20, 2001, to May 30, 2006," noting that Judge Kavanaugh had served in the White House during this timeframe. Compl. ¶ 7, ECF No. 1; Declaration of Gabe Roth in Support of Plaintiff's Motion for a Preliminary Injunction ("Roth Decl.") ¶¶ 10, 13; Ex.[1] A at 5-6. For clarity, Fix the Court noted that responsive records should include "all digital (e-mail), print or other correspondence and attachments including instances where [Judge Kavanaugh] was merely carbon copied (CC'd)." Compl. ¶ 8; Roth Decl. ¶ 14; Ex. A at 5. Fix the Court, a non-partisan, grassroots organization dedicated to pro-transparency reforms of the federal judiciary, including the Supreme Court, and public education concerning issues related to the Court, sought these records related to Judge Kavanaugh's past public service, due to public speculation that Judge Kavanaugh could end up on President Trump's "short list" of potential Supreme Court nominees. Roth Decl. ¶¶ 1-2, 10.[2]

In telephone and email correspondence on August 14 and 15, 2017, DOJ requested that Fix the Court narrow its request to a search of the email accounts of the heads of the Office of

---

[1] Lettered exhibits referenced herein are attached to the Roth Declaration.

[2] *See also, e.g.*, Adam Liptak, *How Trump Chose His Supreme Court Nominee*, N.Y. Times, Feb. 6, 2017, https://www.nytimes.com/2017/02/06/us/politics/neil-gorsuch-trump-supreme-court-nominee.html (noting speculation that "should Justice Anthony M. Kennedy decide to step down[, Judge Kavanaugh] would be a leading candidate"); Lydia Wheeler, *Trump Eyeing Second Supreme Court Seat*, The Hill (Apr. 23, 2017, 10:30 AM), http://thehill.com/regulation/court-battles/329981-trump-eyeing-second-supreme-court-seat ("[Kavanaugh] wasn't included in the original list of possible picks Trump drafted with the help of the Heritage Foundation, but he appears to be a viable candidate now.").

Legal Counsel during the stated time period. Compl. ¶ 9; Roth Decl. ¶ 15; Ex. A at 4. In the spirit

of cooperation, Fix the Court agreed, and on September 5, 2017, submitted a narrowed request

for "[a]ll correspondence sent by the Assistant Attorney General in charge of the Office of Legal

Counsel and his or her primary deputy to Brett M. Kavanaugh and all correspondence sent by

Brett M. Kavanaugh to the Assistant Attorney General in charge of the Office of Legal Counsel

and his or her primary deputy from January 20, 2001, to May 30, 2006." Compl. ¶ 10; Roth

Decl. ¶ 16 ;Ex. A at 3-4. DOJ acknowledged the request that same day but provided no further

response until Fix the Court asked for a status update on October 17, 2017. Compl. ¶¶ 12-13;

Roth Decl. ¶¶ 17-18; Ex. A at 2-3. DOJ responded on October 20, 2017 that there was "not

really" any update and that the "request [was] still in queue for processing." Compl. ¶ 14; Roth

Decl. ¶ 19; Ex. A at 2. Fix the Court followed up with DOJ again in December 2017, and on

December 22, 2017, DOJ informed Fix the Court that its "request [was] in the queue behind

many other requests[.]" Compl. ¶ 15; Roth Decl. ¶ 20; Ex. A at 2. Having received no further

response, Fix the Court requested yet another update on May 14, 2018, to which DOJ responded

on May 25, 2018 that "[u]nfortunately, the status for this request remains the same." Compl. ¶¶

16-17; Roth Decl. ¶¶ 21-22; Ex. A at 1. On July 9, 2018, President Trump nominated Judge

Kavanaugh to the Supreme Court.[3] Fix the Court subsequently filed the present action on July

10, 2018, as DOJ has failed to notify Fix the Court of any determination regarding Fix the

Court's request or to produce the requested records within twenty working days, as required

by FOIA. *See* Compl., ECF No. 1; 5 U.S.C. § 552(a)(6)(A)(i).

---

[3] *Trump Chooses Brett Kavanaugh for the Supreme Court*, N.Y. Times, July 9, 2018,
https://www.nytimes.com/2018/07/09/us/politics/trump-supreme-court-nominee.html.

On July 12, 2018, Fix the Court submitted a request for expedited processing of its FOIA request to DOJ, stating that,

> [T]he information requested is urgently needed in order to inform the public concerning actual or alleged government activity. As you know, on July 9 President Trump announced that he has nominated Mr. Kavanaugh to the Supreme Court, and Senate Majority Leader Mitch McConnell had previously stated that the Senate will act quickly to confirm the President's nominee. The American public has a substantial and urgent need to have access to public records concerning Mr. Kavanaugh's public service record to inform its understanding of the impending confirmation hearings.

Roth Decl. ¶ 27; Ex. A at 1. Recognizing the urgency of the matter, DOJ granted Fix the Court's request the very next day, by letter dated June 13, 2018. *See* Roth Decl. ¶ 28; Ex. B.[4] But to date, DOJ has not made the required determination, produced records, or indicated to what extent expedited processing may impact processing of Fix the Court's FOIA request. Roth Decl. ¶ 23. Indeed, in its letter granting expedited processing, DOJ itself acknowledged its failure to comply with its statutory obligations, stating that due to the volume of requests, "our staff has not yet been able to process your request. Accordingly, we have been *unable to respond to your request within the twenty-day statutory deadline*." Roth Decl. ¶ 28; Ex. B (emphasis added).

## ARGUMENT

Judge Kavanaugh was nominated to replace Justice Anthony Kennedy on the Supreme Court of the United States on July 9, 2018, and Senate Republicans have indicated their intention to move forward with the confirmation process as soon as possible, putting the nomination to a vote no later than fall of 2018 before the November elections.[5] Fix the Court's FOIA request

---

[4] In granting the request, DOJ properly conceded the existence of "[a]n urgency to inform the public about an actual or alleged Federal Government activity" and Fix the Court's status as "a person who is primarily engaged in disseminating information." 28 C.F.R. § 16.5(e)(1)(ii).

[5] *See, e.g.*, *A Senate Deadline for Kavanaugh*, Wall St. J. (July 10, 2018, 7:37 PM), https://www.wsj.com/articles/a-senate-deadline-for-kavanaugh-1531265850 ("(Mr. McConnell is

seeking records concerning Judge Kavanaugh's past public service, which is highly relevant to his confirmation hearings, has been pending with DOJ for more than a year. Roth Decl. ¶ 10. To date, DOJ has not disclosed a single page to Fix the Court and has failed even to make any determinations as to whether it will grant Fix the Court's request. *Id.* ¶ 23. Faced with promises of a rapid confirmation process, Fix the Court now asks the Court to enjoin DOJ from irreparably harming Fix the Court and the public interest through its wrongful withholding of records.

Judicial opinions reflecting Judge Kavanaugh's tenure as a federal judge are readily available, but equally important records reflecting his credentials and conduct prior to his appointment to the federal bench are not. These records, which Fix the Court seeks, are highly relevant to the Senate's consideration of his nomination in the rapidly approaching confirmation hearing. Examples of pre-judicial records that bear on issues Judge Kavanaugh would be likely to encounter in cases before the Supreme Court include those reflecting:

- His work for Independent Counsel Kenneth Starr during the investigation of President Bill Clinton, including drafting portions of the report that led to the president's impeachment (the "Starr Report"); and

- His service as Senior Associate Counsel, Associate Counsel to the President, and White House Staff Secretary for President George W. Bush, during a time of critical policy and legal decisions regarding national security and due process of law, such as the indefinite detention of inmates at a camp in Guantanamo Bay, Cuba.

These non-public records hold great public interest and should see daylight before confirmation hearings.

---

saying he intends to have a vote in the fall, and the goal should be to have a Justice Kavanaugh ready to sit on the High Court when it opens its new term on Oct. 1.").

To date, DOJ has failed to comply with FOIA's requirement that it provide a determination as to the records it will produce in response to Fix the Court's request, including whether it will withhold requested records in full or in part. DOJ's recent grant of expedited processing of the request is appropriate but insufficient. Even on an expedited track, Fix the Court has no guarantee, or even reasonable expectation, that it will receive records in time to use them in connection with Mr. Kavanaugh's pending nomination. DOJ's FOIA expedition is no match for the expedition the Senate has promised to move Judge Kavanaugh's nomination. Accordingly, Fix the Court asks the Court to act now to enjoin DOJ from irreparably harming Fix the Court and the public interest through its wrongful withholding of records.

Fix the Court meets the requirements for preliminary injunctive relief—indeed, if informing the public regarding an imminent lifetime appointment to the Supreme Court fails to qualify for such relief, it is hard to imagine what would. Fix the Court is likely to succeed in establishing that it is entitled to receive the requested records. Moreover, anything less than immediate relief requiring DOJ to process Fix the Court's FOIA request and produce the requested records promptly would irreparably harm Fix the Court's ability to use the requested records to advance its mission and inform the general public in a timely fashion about the nomination of Judge Kavanaugh. *See* Roth Decl. ¶¶ 5-7, 11-12. The requested injunction would not harm DOJ's interests or the interests of the general public; in fact, it is entirely consistent with DOJ's extraordinary efforts to convey material to the Senate for review and would bolster the public interest by dramatically enhancing the public's ability to evaluate a nominee for the Supreme Court and to empower their senators to represent them accurately in the confirmation process. Because all four of the relevant factors weigh in Fix the Court's favor, this Court should

grant the requested injunctive relief compelling DOJ to process the request promptly and

produce non-exempt, responsive records on a timely basis.

## I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA statute itself provides jurisdiction for this Court to consider this matter and

grant all necessary injunctive relief. It states:

> On complaint, the district court of the United States . . . in the
> District of Columbia, has jurisdiction to enjoin the agency from
> withholding agency records and to order the production of any
> agency records improperly withheld from the complainant. In such
> a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B). When an agency fails to comply with the applicable time-limit

provisions in the FOIA statute, a requester "shall be deemed to have exhausted his administrative

remedies with respect to such request." 5 U.S.C. § 552(a)(6)(C)(i); *see also Oglesby v. Dep't of*

*Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails

to comply with statutory time limits). This includes a failure to respond to a FOIA request within

the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d

61, 74 (D.D.C. 2006) ("failure to process FOIA requests in a timely fashion is 'tantamount to

denial.'") (quoting H.R. Rep. No. 93-876, at 6 (1974)). Fix the Court has therefore exhausted all

applicable administrative remedies, and this claim is ripe for adjudication.

## II.    FIX THE COURT IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering a plaintiff's request for injunctive relief, a court must weigh four factors:

(1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the

plaintiff would suffer irreparable injury absent injunctive relief; (3) whether an injunction would

substantially injure other interested parties; and (4) whether the grant of an injunction would

further the public interest. *Al-Fayed v. C.I.A.*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs.,*

*Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). Consideration of these factors here demonstrates Fix the Court's entitlement to injunctive relief.

      **A.**      **Fix the Court Is Likely to Succeed on the Merits.**

As a clear matter of established law, Fix the Court is entitled to the timely processing of its FOIA request and production of non-exempt responsive records. FOIA clearly and unambiguously provides that federal agencies must make records "promptly available to any person" who reasonably describes the records they seek in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A). As an initial matter, the material Fix the Court seeks—correspondence between Judge Kavanaugh and the Office of Legal Counsel—undoubtedly falls within the statutory category of agency records that an agency must produce under FOIA. *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made). In addition, the request "reasonably described" the records sought (specifying a timeframe and individuals within OLC's office from whom correspondence was sought) and complied with all necessary procedures. *See* Roth Decl. ¶¶ 13-14; Ex. A at 3-4. Fix the Court is therefore more than likely to succeed in establishing its entitlement to the requested records.

Moreover, even DOJ acknowledges its failure to satisfy FOIA's requirement that DOJ comply "promptly" with Fix the Court's request. As DOJ admits, once Fix the Court submitted its initial FOIA request on May 8, 2017, it was entitled to a determination by the agency within twenty working days as to the scope of the records it intends to produce or withhold and the reasons for any withholdings. Roth Decl. ¶ 29; Ex. B (DOJ letter granting expedition and noting, "we have been unable to respond to your request within the twenty-day statutory deadline"); 5 U.S.C. § 552(a)(6)(A)(i); *Citizens for Responsibility and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) ("[T]he agency must at least indicate within the

relevant time period the scope of the documents it will produce and the exemptions it will claim with respect to any withheld documents.").[6]

Fix the Court will ultimately prevail in demonstrating its entitlement to timely processing and prompt disclosure of any non-exempt records responsive to its FOIA request. FOIA provides clear statutory directives to agencies in responding to FOIA requests, and DOJ has violated them. In the meantime, Fix the Court urgently needs DOJ to fulfill its obligations. Judge Kavanaugh has been nominated. Senator McConnell seeks a rapid confirmation. Time is of the essence.

### B. Fix the Court Will Be Irreparably Harmed Absent the Requested Relief.

Fix the Court will be harmed irreparably if DOJ does not promptly process its request and produce non-exempt records, especially if further delays prevent disclosure of these records until after the Senate has made a decision on Judge Kavanaugh's nomination. Only preliminary injunctive relief can address this urgent need and the specter of irretrievably losing Fix the Court's rights under FOIA. As this Circuit has long held, "stale information is of little value." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988).

Judge Kavanaugh's nomination has triggered the exigency Congress envisioned in crafting FOIA's expedition provisions. For that reason, and after months of unrewarded patience, Fix the Court requested expedited processing from DOJ—but that request alone will be inadequate to protect its rights.[7] Roth Decl. ¶ 27, Ex. A at 1. Only accelerated review by this

---

[6] DOJ's recognition of its failure to comply with this requirement comes rather late. In September 2017, four months after making its initial request, in the interest of working cooperatively with DOJ, Fix the Court agreed to narrow its request. Compl. ¶ 10; Roth Decl. ¶ 16; Ex. A at 3-4. Yet even now, ten months since it submitted its *narrowed* FOIA request, Fix the Court has yet to receive a determination or even a single document. Roth Decl. ¶¶ 16, 23. And DOJ's recent grant of expedition sheds no light on when a determination or document production can reasonably be expected. *See* Roth Decl. ¶¶ 28-29; Ex. B.

[7] In May 2017, when Fix the Court submitted its initial FOIA request to DOJ seeking records related to Judge Kavanaugh, sustained speculation that Judge Kavanaugh was a likely nominee

Court can ensure that unchecked delays do not irrevocably deprive Fix the Court of the prompt

determination on its request and the value of the non-exempt records to which it is entitled under

FOIA. As this Court has previously noted, "[t]o afford the plaintiff less than expedited judicial

review would all but guarantee that the plaintiff would not receive expedited agency review of its

FOIA request." *Wash. Post*, 459 F. Supp. 2d at 66; *see also Elec. Privacy Info. Ctr. v. U.S. Dep't*

*of Justice ("EPIC")*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006) ("[T]he statutory right to

expedition in certain cases underlined Congress' recognition of the value in hastening release of

certain information. As [the plaintiff] correctly notes, the loss of that value constitutes a

cognizable harm. As time is necessarily of the essence in cases like this, such harm will likely be

irreparable." (internal citations and quotation marks omitted)).

      Further delay in processing the request will irreparably harm the ability of Fix the

Court—and the public—to obtain information in time to inform the public discussion of Judge

Kavanaugh's record and its implications for the future of the United States Supreme Court.

      Losing the ability to review Judge Kavanaugh's record would be particularly harmful to

Fix the Court, whose mission is to promote transparency, accountability, and reform on the

Supreme Court. Roth Decl. ¶¶ 1-2. Fix the Court's entire purpose is to use transparency to help

---

in the event of a vacancy would likely have supported a request for expedited processing. See, e.g., Liptak, *supra* note 2; Wheeler, *supra* note 2. Given the lack of an active vacancy at that time, however, and unaware that DOJ would fail to act on its request for more than a year, Fix the Court did not initially seek expedited processing. Judge Kavanaugh's nomination materially changes the situation and makes DOJ's unwarranted and inexplicable unresponsiveness inexcusable. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74-75 (time of the essence with respect to records relevant to upcoming election). Fix the Court has accordingly submitted a request for expedited processing, as allowed at any time by DOJ's regulations. 28 C.F.R. § 16.5(e)(2) ("A request for expedited processing may be made at any time."). But even though the request has been granted, DOJ has provided no indication of how long processing will take, and given DOJ's record of recalcitrance over the past fourteen months with respect to Fix the Court's FOIA request, the Court's assistance is still urgently needed to protect the interests of both Fix the Court and the general public, for the reasons articulated in this motion.

it, and the public, monitor the activities of federal courts and assess judges' records. *Id.* ¶¶ 4-6. A prompt determination and timely production of non-exempt records would equip Fix the Court to enhance the public debate on these issues and to raise awareness of reforms Fix the Court believes are necessary to improve the Supreme Court's transparency and accountability. *Id.* ¶ 9. These records therefore possess unique value while Judge Kavanaugh's nomination is pending and is a subject of widespread public debate, and that value will evaporate when the Senate makes its decision on Judge Kavanaugh's nomination and the public debate ends.

Our system of representative democracy depends upon an informed citizenry. That principle animates FOIA. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). Fix the Court's public advocacy embodies that principle. Its work strives to provide the public with important information about the Supreme Court and, in this case, an individual who may join it. Roth Decl. ¶¶ 5-6. The public can in turn use that information to influence the nomination process, which is often shaped by constituents' communications to their elected officials about their support for or opposition to a nominee. Members of the public cannot reliably fulfill that role or meaningfully participate in the process without adequate information on which to base their opinions, and organizations like Fix the Court cannot inform and participate in the public discourse about crucial government institutions and reforms without access to information about government activities. In light of the Senate Majority Leader's announced commitment to fast-track a decision on Judge Kavanaugh's nomination, there is an urgent need to inform the public—now—about his legal career and qualifications for a lifetime appointment to the nation's highest court.

If the DOJ is allowed to drag its feet even further in processing Fix the Court's request and the Senate confirms (or votes not to confirm) Judge Kavanaugh without the public having the benefit of the insight contained in the records sought by this request, the public's ability to participate meaningfully in the debate will have been irreparably harmed, as will Fix the Court's interest in obtaining its statutorily-guaranteed access to these records and using those records in support of its reform and accountability mission.

This case is therefore much like *Washington Post v. Department of Homeland Security*, in which the plaintiff sought visitor logs for the Vice President's office and residence, which the plaintiff asserted would "assist the public in the degree to which lobbyists and special interest representatives may have influenced policy decisions of the Bush administration." 459 F. Supp. 2d at 65 (internal quotation marks omitted). The plaintiff explained that "[w]ith the midterm elections looming, any delay in processing this request would deprive the public of its ability to make its views known in a timely fashion." *Id.* Issuing its opinion in October of 2006, this Court concluded that "[b]ecause the urgency with which the plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does not receive expedited treatment." *Id.* at 75.[8] The same is true here, with the Senate rushing to take up Judge Kavanaugh's nomination before the upcoming midterm elections in November. The nomination has attracted widespread media and public interest and general recognition that the Senate's decision on his nomination has the potential to alter the balance of the Supreme Court and the future of its jurisprudence on

---

[8] In subsequent, unrelated litigation, the D.C. Circuit held that White House visitor logs are not "agency records" for purposes of FOIA. *See Judicial Watch v. U.S. Secret Service*, 726 F.3d 208, 228-29 (D.C. Cir. 2013). However, nothing in that decision affects this Court's analysis regarding irreparable harm in *Washington Post v. Department of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006).

fundamental constitutional questions for decades.[9] The window for public education and

discussion will be open only briefly, and it is imperative that Fix the Court receive the records it

seeks before that window closes. *See Elec. Frontier Found. v. Office of the Dir. of Nat'l*

*Intelligence*, 542 F. Supp. 2d 1181, 1187 (N.D. Cal. 2008) ("Although, and perhaps because, the

Court cannot predict the timing of passage of the legislation in light of the ongoing debate in the

legislature and with the Administration, the Court finds that delayed disclosure of the requested

materials may cause irreparable harm to a vested constitutional interest in 'the uninhibited,

robust, and wide-open debate about matters of public importance that secures an informed

citizenry.'") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Indeed, by now it is almost axiomatic that "stale information is of little value." *Payne*,

837 F.2d at 494; *accord Calderon v. U.S. Dep't of Ag.*, 236 F. Supp. 3d 96, 114 (D.D.C. 2017);

*see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 286 F. Supp. 3d 96, 110

(D.D.C. 2017) ("District courts in this circuit have recognized that, where an obligation to

disclose exists, plaintiffs may suffer irreparable harm if they are denied access to information

that is highly relevant to an ongoing public debate." (citing *Wash. Post*, 459 F. Supp. 2d at 75;

*EPIC*, 416 F. Supp. 2d at 41)). Thus, "failure to process FOIA requests in a timely fashion is

'tantamount to denial.'" *Wash. Post*, 459 F. Supp. 2d at 74 (quoting H.R. Rep. No. 93-876, at 6

(1974)). That is no doubt why courts in this jurisdiction have repeatedly issued preliminary

---

[9] *See, e.g.*, Stephen Jessee & Neil Malhotra*, The Chart That Shows the Supreme Court Will Be Out of Step With the Country*, N.Y. Times, July 12, 2018, https://www.nytimes.com/2018/07/12/opinion/kavanaugh-supreme-court-right.html (arguing that "[i]f Judge Brett Kavanaugh joins the Supreme Court, it will mark a sharp move to the right"); Oliver Roeder & Amelia Thomson-DeVeaux, *How Brett Kavanaugh Would Change The Supreme Court*, FiveThirtyEight (July 9, 2018, 9:34 PM), https://fivethirtyeight.com/features/how-brett-kavanaugh-would-change-the-supreme-court/; Brian Bennett, *How Brett Kavanaugh Could Change the Supreme Court—and America*, Time, July 12, 2018, http://time.com/5336621/brett-kavanaugh-supreme-court/.

injunctions in FOIA cases where the requester seeks information urgently needed to inform a pending or developing situation. *See, e.g., id.* at 74-75 (finding irreparable harm where requested records could inform public opinion in advance of upcoming election); *EPIC*, 416 F. Supp. 2d at 40-41 (finding irreparable harm where requested records related to "current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program"); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding urgency requirement for expedition satisfied based on "upcoming expiration of the special provisions of the Voting Rights Act in 2007"); *Aguilera v. FBI*, 941 F. Supp. 144, 151-52 (D.D.C. 1996) (finding irreparable harm where requested records related to prisoner's challenge to conviction while already serving prison sentence); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (granting preliminary injunction for records needed for upcoming criminal trial); *cf. Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10-11 (D.D.C. 2014) (finding no irreparable harm because plaintiff offered no evidence that requested records would be of "vital public interest for an upcoming congressional election or congressional or agency decision-making process requiring public input" (internal citations and quotation marks omitted)).

As in many of those cases, Fix the Court's ability to contribute to the public's understanding of the qualifications of the nominee to the Supreme Court will be irreparably harmed if DOJ is not required to promptly process Fix the Court's FOIA request and produce all responsive documents on an accelerated schedule. DOJ itself recognizes this reality, and through this motion, Fix the Court seeks judicial intervention to ensure DOJ will comply with its obligations to expedite disclosure.

### C.    The Requested Relief Will Not Burden Others' Interests.

Fix the Court, the public, and the DOJ are aligned in their mutual strong interest in the disclosure and review of Judge Kavanaugh's record.

DOJ itself cannot claim to be harmed by an order compelling it to comply with its statutory obligations. Indeed, DOJ has already recognized that Judge Kavanaugh's nomination demands review of his lengthy record and that that review will require allocation of additional resources. Deputy Attorney General Rod J. Rosenstein has contacted *every* United States Attorney across the country to ask that they make potentially hundreds of federal prosecutors available to assist with a prioritized review of government records pertaining to Judge Kavanaugh.[10] Where the government has already conceded the extraordinary value of these and similar records and begun to marshal resources for their review, Fix the Court's request for prompt processing and production would not meaningfully increase DOJ's burden.

Nor would granting Fix the Court relief unduly burden other FOIA requesters. As noted, DOJ is already assembling a team to prioritize review of Judge Kavanaugh's records, and that team will be drawn from attorneys who are not typically tasked with processing FOIA requests. Ordering DOJ to promptly release all records responsive to Fix the Court's request, therefore, need not divert resources currently devoted to processing other FOIA requests, nor is there reason to believe that vindication of Fix the Court's rights to these records would delay or impair the rights of any other FOIA requester to timely processing and disclosure of other records.

Additionally, the whole purpose of the addition of the expedited processing provision in 1996 was to prioritize requesters with an urgent need for information. *See EPIC*, 416 F. Supp. 2d at 36 (explaining 1996 amendment adding expedited processing requirements). Thus, Congress itself contemplated that certain requesters would go to the head of the queue upon a showing of compelling need—as DOJ agrees Fix the Court has made in this instance. *See* Roth Decl. ¶ 28;

---

[10] Katie Benner, *Rosenstein Asks Prosecutors to Help With Kavanaugh Papers in Unusual Request*, N.Y. Times, July 11, 2018, https://www.nytimes.com/2018/07/11/us/politics/rosenstein-kavanaugh-document-review-prosecutors.html.

Ex. B. Thus, an order from this Court that DOJ promptly process Fix the Court's request and provide all non-exempt responsive records on an accelerated schedule set by this Court will not harm the interests of the non-moving party or any other entity.

    **D.**    **The Public Interest Favors the Requested Relief.**

    A preliminary injunction is indispensable to protect the public's right to government transparency and essential interest in informed and meaningful participation in the Senate confirmation process. Consequently, the requested relief clearly serves the public interest.

    First, courts in this jurisdiction have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F. Supp. 2d at 76. The very existence of the Freedom of Information Act is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999) ("There is public benefit in the release of information that adds to citizens' knowledge" of government activities). DOJ has already delayed its processing of Fix the Court's narrowed request for nearly one year, suggesting that even purportedly expedited processing will unduly defer the public benefits of transparency that FOIA is intended to protect.

    But the public benefit of injunctive relief here extends far beyond the general public interest in transparency and faithful adherence to FOIA. Congress enacted FOIA to ensure that citizens are able to participate in public debate in an informed manner, and this interest grows with the gravity of public decisions at hand. *See Robbins Tire*, 437 U.S. at 242 ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the

governed."). There are few moments of public debate with urgency equal to that surrounding selection of a new justice to serve on the nation's highest court.

Courts have recognized the importance of timely disclosure when information is relevant to elections. *See, e.g.*, *Wash. Post*, 459 F. Supp. 2d at 74-75. The public's need is arguably stronger in advance of a Supreme Court confirmation, because the public will not have an opportunity to revisit this decision post-confirmation with the benefit of either hindsight or belated disclosures. Congress and the Executive Branch comprise myriad individuals and face regular elections that afford the public regular opportunities to affirm or disavow their actions and to shape their priorities; while each election is significant, there are natural limits on the effects of each individual election and frequent opportunities for the public to redress errors or reverse course. Not so for the third branch of government. Vacancies on the Supreme Court are relatively rare, and lifetime appointments render the decisions on how to fill them all but irrevocable.

Although the public enjoys far less ability to influence its highest court than it wields over the political branches, the Supreme Court, and each of its justices, exerts acute influence over the day-to-day lives of the American public. As one of only nine justices on a court that has been, of late, sharply divided, Judge Kavanaugh would be in a position to have significant impact for a generation with regard to fundamental rights and equal protection of the laws and to exert substantial, even dispositive, influence on resolution of cases guiding the relationship between the branches of government and defining the limits of executive and legislative power. The public has only one opportunity to assess his fitness for this august position and to convey its views and concerns to the senators entrusted with weighing his nomination. A preliminary

injunction ensuring timely processing and disclosure of records reflecting Judge Kavanaugh's record of government service maximizes that public's ability to avail itself of that opportunity.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, Plaintiff Fix the Court respectfully requests that this Court grant a preliminary injunction requiring DOJ to process Fix the Court's FOIA request and produce all non-exempt responsive records and an index justifying the withholding of any withheld records by such date as the Court deems appropriate.

Dated: July 16, 2018

Respectfully submitted,

*/s/ Elizabeth France*
Elizabeth France
D.C. Bar No. 999851

*/s/ Austin R. Evers*
Austin R. Evers
D.C. Bar No. 1006999

AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 869-5244
beth.france@americanoversight.org
austin.evers@americanoversight.org

*Counsel for Plaintiff Fix the Court*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2018, I caused a copy of the foregoing Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction to be hand-delivered to defendant at the following address:

U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

In addition, a courtesy copy has been delivered to:

Jessie K. Liu
U.S. Attorney for the District of Columbia
555 4th Street NW
Washington, DC 20530

Dated: July 16, 2018                    */s/ Elizabeth France*
                                        Elizabeth France
                                        D.C. Bar No. 999851
                                        AMERICAN OVERSIGHT
                                        1030 15th Street NW, B255
                                        Washington, DC 20005
                                        (202) 869-5244
                                        beth.france@americanoversight.org

                                        *Counsel for Plaintiff Fix the Court*

19